**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **United States of America,** | **Criminal No. 07-CR-47** |
| | **(PAM/SRN)** |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Antonio Delgado Herrera (01),** | |
| **Defendant.** | |

LeeAnn K. Bell, Esq., Assistant U.S. Attorney, on behalf of Plaintiff

Caroline Durham, Esq., Assistant Federal Defender, on behalf of Defendant

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter comes before the undersigned United States Magistrate Judge on Defendant Antonio Delgado Herrera's Motion to Suppress Statements, Admissions and Answers. (Doc. No. 13). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

**I.   BACKGROUND**

An Indictment was filed on February 13, 2007, charging Defendant with one count of Illegal Re-Entry after Deportation, in violation of 6 U.S.C. §§ 202, 557 and 8 U.S.C. §§ 1326(a), 1326(b)(2). (Doc. No. 8.)

Jeremy L. Christenson, a special agent with United States Immigration and Customs

Enforcement ("ICE") testified at the criminal motions hearing. A Miranda waiver form signed by Defendant on September 22, 2006 was received into evidence and labeled Government Exhibit 1. This matter is set for trial before United States District Judge Paul A. Magnuson on May 7, 2007.

## II.   FACTS

On September 22, 2006, Special Agent Christenson interviewed Defendant at the Hennepin County Jail. At the time of the hearing, Special Agent Christenson had been a special agent with the Office of Investigation at ICE for just over one year. His prior law enforcement experience included working as an air marshal for four years and as a municipal police officer for nine years.

Special Agent Christenson testified that when he arrived at the Hennepin County Jail, he found Defendant in custody on local charges. Special Agent Christenson was dressed in plain clothes and he was the sole officer present during the interview. At the outset of the interview, Special Agent Christenson, who does not speak Spanish, asked Defendant if he spoke English. Defendant replied that he spoke "some English." Special Agent Christenson then instructed Defendant to alert him during the interview if he did not understand the questioning. Prior to beginning questioning, Special Agent Christenson proceeded to advise Defendant of his Miranda rights by reading verbatim from the Miranda waiver form which now constitutes Government Exhibit 1. The "Waiver" section of the Miranda waiver form reads in relevant part, "I have had the above statement of my rights read and explained to me and I fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity." He then asked Defendant if he understood what he had read and inquired whether Defendant had any questions about his Miranda rights.

Without asking any questions, Defendant indicated that he understood what Special Agent Christenson had just read and signed the Miranda waiver form.

Special Agent Christenson then questioned Defendant in English. He testified that Defendant responded to his questions appropriately and that he could determine from their conversation that Defendant could communicate in English when he desired. He did not ask Defendant to specify his level of English. He also testified that Defendant did not ask questions at any time during the interview. In addition, he stated that Defendant never asked to stop the interview and never asked for a lawyer, or any other person. The entire interview lasted five minutes.

### III.   MOTION TO SUPPRESS STATEMENTS

Defendant moves the Court to suppress any incriminating statements that he made in the course of his interview with Special Agent Christenson, arguing that the Government has failed to prove that he understood English sufficiently to make a knowing and intelligent waiver of his Miranda rights.

The United States Supreme Court held in Miranda v. Arizona that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). The safeguards required are that any time a person is taken into custody for questioning "the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. "Miranda holds that [t]he defendant may waive effectuation of the rights conveyed in the warnings provided the waiver is made voluntarily, knowingly, and intelligently." Moran v. Burbine, 475 U.S. 412, 421 (1986).

To determine if a defendant's testimony was given voluntarily, courts must ask whether, in the totality of the circumstances, law enforcement officials obtained the evidence by overbearing the will of the accused. See Haynes v. Washington, 373 U.S. 503, 513-14 (1963). The factual inquiry centers upon (1) the conduct of the law enforcement officials in creating pressure; and (2) the suspect's capacity to resist that pressure. See Mincey v. Arizona, 437 U.S. 385, 399-401 (1978). Likewise, a waiver is knowing and intelligent if it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998). The government "need prove waiver only by a preponderance of the evidence." Colorado v. Connelly, 479 U.S. 157, 168 (1986).

Defendant has not alleged that his waiver was not voluntary, but rather that the Government failed to prove by a preponderance of the evidence that it was knowing and intelligent. In examining the totality of the evidence in the record, the Court finds that the only evidence in the record supports Special Agent Christenson's determination that Defendant could communicate effectively in English when he chose to do so. At the outset of the interview Defendant stated that he spoke "some English." Defendant did not express any lack of understanding, did not ask any questions, did not ask Special Agent Christenson to stop the interview at any time and did not ask to speak with anyone, including a lawyer. Moreover, Special Agent Christenson was an experienced law enforcement officer and he testified that Defendant answered his questions appropriately and in context. Defendant has presented no evidence to support the conclusion that he could not understand English well enough to make a knowing and intelligent waiver of his Miranda rights.

Therefore, the Court finds that Defendant's waiver of his Miranda rights was voluntary,

knowing and intelligent.  See e.g. United States v. Amano, 229 F.3d 801, 804-805 (9th Cir. 2000) (upholding waiver where interrogating officers testified that defendant appeared to understand and answer questions comfortably in English);  Campaneria v. Reid,  891 F.2d 1014, 1020 (2nd Cir. 1989) (upholding waiver in a habeas context where defendant indicated that he understood the Miranda warnings in English by answering questions in English, although he was not a native speaker and his responses contained some Spanish.)

**THEREFORE, IT IS HEREBY RECOMMENDED that:**

    **1.**    Defendant's Motion to Suppress Statements, Admissions and Answers (Doc. No. 13) be **DENIED**.


Dated: April 10, 2007

                  s/ Susan Richard Nelson

                  SUSAN RICHARD NELSON
                  United States Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by **April 25, 2007** after being served with a copy thereof.  The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.